## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SUK JOON RYU, a/k/a James S. Ryu** | : | |
| | : | |
| **Plaintiff.** | : | |
| | : | |
| **v.** | : | **CASE NO. _____** |
| | : | |
| **HOPE BANCORP, INC., as successor by merger to Wilshire Bancorp, Inc.,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Suk Joon Ryu, a/k/a James S. Ryu ("Ryu"), by and through his undersigned counsel, brings this complaint against Hope Bancorp, Inc. ("Hope Bancorp"), as successor by merger to Wilshire Bancorp, Inc. ("Wilshire Bancorp"), and alleges as follows:

### NATURE OF THE ACTION

1.      In October 2013, Wilshire Bancorp acquired by way of merger BankAsiana, a commercial bank founded in 2006 and chartered under the laws of the State of New Jersey (the "Merger"). The Merger was completed on or about October 1, 2013.

2.      Ryu served as BankAsiana's Senior Vice President and Chief Operating Officer from its founding in 2006 until the Merger.

3.      In January 2014, a former employee of BankAsiana by the name of Miye Chon, a/k/a Karen Chon ("Chon"), admitted to Wilshire Bank that she had

embezzled over a million dollars from BankAsiana during the period from 2010 to 2013 and claimed that Ryu knew about and approved of her criminal activities and that she gave a large part of the cash to him. Ryu has steadfastly denied this.

4.     Ryu maintains that Chon's allegation is baseless and also unbelievable, as she has failed to account for approximately $900,000 in cash she admits she embezzled and she has an obvious motive to blame someone else. There are no witnesses or other evidence to corroborate any part of Chon's allegations against Ryu.

5.     Chon's allegation led to a criminal investigation by the United States Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") (the "DOJ/FBI Investigation"). Chon eventually pleaded guilty to federal charges of embezzling approximately $1.4 million. Ryu has never been charged with anything.

6.     Chon's allegations also led to a federal court civil lawsuit by Wilshire Bancorp's wholly owned subsidiary Wilshire Bank against Chon, Ryu, and others (the "Embezzlement Action"), captioned *Bank of Hope, as successor to Wilshire Bank, v. Miye Chon, et al.*, Case No. 2:14-cv-01770-JLL-JAD. That action has been pending since March 2014.

7.     Ryu has incurred substantial legal fees and costs in the DOJ/FBI investigation and the Embezzlement Action. He continues to incur substantial fees in the Embezzlement Action.

8.     Ryu recently discovered that he had in his possession a copy of the Agreement and Plan of Merger between Wilshire Bancorp and BankAsiana

("Merger Agreement"). Upon review, he learned for the first time that Section 6.7 of the Merger Agreement gives him a right as a former officer of BankAsiana to advancement and indemnification of his legal fees and other expenses as incurred in the DOJ/FBI Investigation and the Embezzlement Action. A true and correct copy of relevant portions of the Merger Agreement is attached hereto as Exhibit A.

9.     Ryu made a demand to Hope Bancorp that it honor its obligations under Section 6.7. Hope Bancorp is the corporate parent of Bank of Hope, which is now the plaintiff that is suing Ryu in the Embezzlement Action. Hope Bancorp wrongfully declined Ryu's request for advancement.

10.     Ryu brings this action to obtain an order compelling Hope Bancorp to honor its contractual obligations to advance him the reasonable legal fees and expenses he incurred in the DOJ/FBI Investigation as well as the reasonable legal fees and expenses he has incurred and continues to incur in the Embezzlement Action. He also seeks reasonable legal fees and expenses in this action to enforce his rights under Section 6.7.

**THE PARTIES**

11.     Ryu resides at 630 Rita Drive, River Vale, New Jersey 07675, and is a citizen of the State of New Jersey.

12.     Hope Bancorp, as successor by merger to Wilshire Bancorp, is a Delaware corporation with its principal place of business at 3200 Wilshire Boulevard, Los Angeles, California 90010. It is the holding company of Bank of Hope, a commercial bank chartered under the laws of the State of California, which

also has its principal place of business at 3200 Wilshire Boulevard, Los Angeles, California 90010. Bank of Hope is successor to Wilshire Bank.

## SUBJECT MATTER JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14.    This Court has authority to issue a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Section 9.12(a) of the Merger Agreement provides that any action to enforce it must be bought in state or federal court in New York.

16.    Ryu through his counsel asked Hope Bancorp if it would agree to waive Section 9.12 of the Merger Agreement so that this action could be filed in federal court in New Jersey and assigned to the District Judge and Magistrate Judge hearing the Embezzlement Action. Hope Bancorp declined this request.

## BACKGROUND

### The Merger Agreement Provides for Mandatory Advancement

17.    On June 8, 2013, Wilshire Bancorp and BankAsiana entered into the Merger Agreement.

18.     Section 6.7 of the Merger Agreement, titled "Indemnification,"

provides in pertinent part as follows:

> Acquiror *shall* indemnify, defend and hold harmless . . .
> Indemnitees . . . against . . . any and all claims, damages,
> liabilities, losses, costs, charges, expenses (*including*,
> subject to the provisions of this Section 6.7, *reasonable fees
> and disbursements of legal counsel and other advisers and
> experts as incurred*) . . . by reason of the fact that he or she
> is or was a director or officer of the Bank . . . in connection
> with, arising out of or relating to . . . (i) *any threatened,
> pending or completed claim, action, suit or proceeding
> (whether civil, criminal, administrative or investigative)* . .
> . or (ii) *the enforcement of the obligations of Acquiror set
> forth in this Section 6.7*, in each case to the fullest extent
> that the Bank would have been permitted under its
> certificate of incorporation and bylaws in effect as of the
> date hereof (*and Acquiror shall also advance expenses as
> incurred due to clauses (i) or (ii) above to the fullest extent
> so permitted*).

*Id.* at 50 (§ 6.7(a)) (emphasis added).

19.     The applicable certificate of incorporation and bylaws for

BankAsiana in effect as of the date of the Merger Agreement neither prohibited nor

placed any limits on the ability of BankAsiana to advance attorneys' fees and

expenses of its officers and directors under New Jersey law. True and correct copies

are attached hereto as Exhibits B and C.

20.     The applicable provision of New Jersey law at the time

permitted (and still permits) advancement. It provides that "[e]xpenses incurred by

a corporate agent in connection with a proceeding may be paid by the corporation in

advance of the final disposition of the proceeding as authorized by the board of

directors upon receipt of an undertaking by or on behalf of the corporate agent to

repay such amount if it shall ultimately be determined that he is not entitled to be indemnified as provided in this section." N.J. Stat. § 17:9A-250(F).

**Chon's Accusation Against Ryu**

21.     In or around January 2014, Chon admitted to Wilshire Bank that she had embezzled over $1 million from BankAsiana between 2010 and 2013.

22.     Although Chon made contradictory statements, including a statement to the FBI in early February 2014 that Ryu had no role in the embezzlement and that she had accused him only because Wilshire Bank employees encouraged her to implicate him, she then said later in February 2014 that Ryu was involved in the embezzlement scheme.

23.     According to what Chon told Bank of Hope's General Counsel Lisa Pai ("Pai") in February 2014, Chon started embezzling from the accounts at BankAsiana of Chon's husband's business partner and his sister, which she planned to pay back, when Ryu somehow caught her. Pai did not ask how Ryu supposedly caught her (and he denies it), but clearly if Ryu did catch her it was because of his role as an officer of BankAsiana.

24.     According to Pai at her deposition, Chon said that Ryu asked Chon for a loan, and thereafter she delivered him cash in multiple installments totaling over $700,000 which Ryu called loans but he never paid back.

25.     Also according to Pai at her deposition, she thought that Ryu used his position at BankAsiana to ensure that Chon would not be caught.

26.     Chon testified at her deposition that she delivered the cash $10,000 or $20,000 at a time to Ryu in interoffice envelopes sent to Ryu's office or picked up by Ryu at the bank branch where Chon worked.

**The Embezzlement Action**

27.     Based on Chon's accusation, on March 19, 2014, Wilshire Bank filed a complaint naming as defendants Chon, Ryu, and others (the "Original Complaint").

28.     Paragraph 1 of the Original Complaint alleged as follows:

> Wilshire Bank, as the successor-by-merger to BankAsiana, brings this action to recover all of the losses and damages resulting from the Embezzlement (defined below), perpetrated by BankAsiana's former Assistant Vice President and Operations Officer and its former Senior Vice President and Chief Operating Officer, from in or about 2010 to 2013, which totals over $1.57 million.

Original Complaint at 1-2 (¶ 1) (Embezzlement Action, ECF No. 1).

29.     Paragraph 20 of the Original Complaint alleged as follows:

> As a result of the that investigation, Wilshire Bank has discovered that—*for well over three years, from in or about 2010 to October, 2013*—Chon (then BankAsiana's Assistant Vice President and Operations Officer) and Ryu (then BankAsiana's Senior Vice President and Chief Operating Officer) conspired together and engaged in a fraudulent scheme, known and referred to as "lapping," to embezzle from BankAsiana (the "Embezzlement"). In pursuance of such conspiracy, Chon, aided and abetted by Ryu, periodically removed sums of cash from the bank's cash vault and, to conceal such theft, falsified the bank's records by: (a) recording fictitious "withdrawals" in corresponding sums from certain of the bank's customers' CD accounts; and (b) thereafter recording fictitious "transfers" of funds from other customers' CD accounts to those accounts shortly prior to maturity

*Id*. at 4-5 (¶ 20) (emphasis in the original).

30.     Paragraph 21 of the Original Complaint alleged as follows:

> Upon information and belief, through such fraudulent scheme, Chon and Ryu embezzled a total of not less than $1,575,754.00 from BankAsiana during that period, by falsifying the bank's records relating to seven CD accounts.

*Id*. at 5 (¶ 21).

31.     Paragraph 23 of the Original Complaint alleged as follows:

> Upon information and belief, from 2010 to 2013, in pursuance of the conspiracy, Chon diverted portions of the proceeds of the Embezzlement to Ryu for his own use and benefit.

*Id*. at 5 (¶ 23).

32.     Based on these allegations, Wilshire Bank asserted seven counts against Ryu for conversion of cash from BankAsiana's vault. *Id*. at 15-17 (¶¶ 87, 90, 93, 96, 99, 102, 105).

33.     Wilshire Bank also asserted a fraud claim against Ryu. *Id*. at 18 (¶¶ 108-09).

34.     Wilshire Bank also asserted a civil conspiracy to defraud claim against Ryu, as a well as three counts of breach of fiduciary duty based on Ryu's alleged conversion of the cash, causing Chon to falsify BankAsiana's records to conceal the theft of the cash, and Ryu's conspiracy with Chon to maliciously and willfully enter into a scheme to perpetrate the embezzlement. *Id*. at 18-20.

35.     Wilshire Bank also alleged that three days before the Merger Agreement became effective, Ryu removed from BankAsiana a laptop computer and desktop computer that allegedly contained Wilshire Bank's confidential and proprietary information and trade secrets and that he used the information and trade secrets to compete against Wilshire Bank. *Id*. at 8 (¶¶ 38-39) Based on these allegations, Wilshire Bank asserted four additional counts for breach of fiduciary duty, two conversion claims, two unjust enrichment claims, and claims for misappropriation of trade secrets and misappropriation of confidential information. *Id*. at 20-25.

36.     On June 10, 2014, Ryu filed counterclaims and a crossclaim that arose out of the transactions or occurrences that were the subject of and at issue in the Original Complaint: malicious prosecution, defamation, and illegal seizure by Wilshire Bank of $54,000 in Ryu's checking account, as well as a crossclaim for defamation. *See* Embezzlement Action, ECF No. 36 at 22-25.

37.     On July 11, 2016, Wilshire Bank filed an amended complaint ("Amended Complaint") against Chon, Ryu, and others. The material allegations regarding the embezzlement and Ryu's alleged role in it are the same as the Original Complaint. Amended Complaint at 3-5 (¶¶ 1, 16, 18, 19, 21) (Embezzlement Action, ECF No. 92).

38.     In the Amended Complaint, Wilshire Bank consolidated its seven conversion counts against Ryu into one count. *Id*. at 11 (¶ 70).

39.     Wilshire Bank in the Amended Complaint asserted the same civil conspiracy to defraud claim as in the Original Complaint, but dropped its fraud claim. *Id*. at 11-12.

40.     Also in the Amended Complaint, Wilshire Bank consolidated its three counts for breach of fiduciary duty against Ryu based on his alleged role in the embezzlement into two counts. *Id*. at 12-13.

41.     Wilshire Bank in the Amended Complaint dropped the counts for alleged misappropriation of trade secrets and misappropriation of confidential information, associated breach of fiduciary duty claims for these counts, unjust enrichment claims for the removal of the two computers, and breach of fiduciary duty claims related to the computers. Wilshire Bank kept the two conversion claims for the computers. *Id*. at 13-14.

42.     On September 26, 2016, Ryu filed an amended answer to the Amended Complaint, and asserted counterclaims and crossclaims that arose out of the transactions or occurrences that were the subject of and at issue in the Original Complaint and Amended Complaint, including counterclaims for defamation, illegal seizure of funds on deposit, tortious interference with a contractual relationship, and conversion, as well as crossclaims for defamation, contribution, and indemnification. *See* ECF No. 111 at 44-53.

**Ryu Has Incurred Legal Fees and Expenses**

43.     Ryu has incurred legal fees and expenses in the Embezzlement Action. Ryu was initially represented in the Embezzlement Action and the DOJ/FBI Investigation by Tressler LLP (Robert Fettweis, Esq.) and then represented on both matters by The Law Offices of Jungsup Kim LLC (Jungsup Kim, Esq.). In or around May 2015, Ryu engaged Steve Harvey Law LLC in the Embezzlement Action.

44.     Ryu is not expecting to incur additional legal fees or costs in connection with the FBI/DOJ Investigation. Chon plead guilty to the charges against her, has been sentenced, and is now serving time in prison. Ryu has not been charged with any crimes.

45.     Ryu will continue to incur legal fees and costs in the Embezzlement Action.

46.     Ryu has also incurred legal fees and costs to Steve Harvey Law LLC for this action to enforce Section 6.7 of the Merger Agreement and will continue to incur legal fees and costs in this action.

**Hope Bancorp's Wrongful Denial of Ryu's Demand for Advancement**

47.     By letter to Kevin S. Kim, President and Chief Executive Officer of Hope Bancorp and Bank of Hope (care of Bank of Hope's attorney in the New Jersey Litigation, Michael M. Yi), dated January 10, 2018, counsel for Ryu demanded that Hope Bancorp comply with its advancement obligations pursuant to Section 6.7 of the Merger Agreement (the "Demand") in connection with the

Embezzlement Action and DOJ/FBI Investigation. A true and correct copy of the Demand is attached hereto as Exhibit D.

48.     The Demand included an undertaking from Ryu that stated "I hereby agree to repay to Bank of Hope any expenses paid on my behalf in advance of the final disposition of the Lawsuit, if it shall ultimately be determined by final judicial decision that I am not entitled to be indemnified." *Id*. (Exhibit C).

49.     The Demand also included invoices and expenses from Ryu's prior counsel in the Embezzlement Action and DOJ/FBI Investigation, as well as an invoice and expenses from Ryu's current counsel in the Embezzlement Action from April 2015 through December 31, 2017. *Id*. (Exhibits D-G). The Demand provided that Ryu will update his request for advancement of legal fees and expenses on a monthly basis. *Id*. at 3. Ryu's counsel offered to provide additional information about its fees and expenses to demonstrate the reasonableness of the amounts shown on the invoice. *Id*. The Demand also requested payment on or before January 24, 2018. *Id*.

50.     By letter dated February 2, 2018, Hope Bancorp through its attorney denied the demand for advancement. A true and correct copy is attached hereto as Exhibit E. Hope Bancorp claimed Ryu is not entitled to advancement because: (1) he was sued by reason of his alleged unlawful participation in the embezzlement, not by reason of him being a corporate officer of BankAsiana; (2) BankAsiana's certificate of incorporation and bylaws do not provide for

advancement; and (3) he did not promptly notify Hope Bancorp of his right to advancement. *Id*. at 1-3.

51.     None of these purported grounds provides a basis for Hope Bancorp's denial of the Demand.

52.     Contrary to the assertions by Hope Bancorp: (1) the advancement rights under Section 6.7 of the Merger Agreement apply even though Ryu allegedly engaged in serious misconduct and, in fact, the unlawful nature of the alleged conduct and Ryu's allegedly improper motives are irrelevant; (2) there is no requirement that BankAsiana's certificate of incorporation and its bylaws provide for the right of advancement, which is authorized by statute, as long as they did not prohibit or limit the right, which they did not; and (3) under the express terms of Section 6.7, late notice would bar advancement only to the extent that Hope Bancorp could prove prejudice to it resulting from the late notice, and it has not claimed any prejudice because it was not prejudiced.

## COUNT I

### Declaratory and Injunctive Relief for Ryu's Right to Advancement
### <u>Under the Merger Agreement</u>

53.     Ryu hereby incorporates the averments of Paragraphs 1 through 52 as if fully set forth herein.

54.     Section 6.7 of the Merger Agreement is a valid and binding legal obligation binding upon Hope Bancorp.

55.     Ryu is a third-party beneficiary of the Merger Agreement with standing to enforce Section 6.7.

56.    Ryu was named a party to the Embezzlement Action by reason of the fact that he was an officer of BankAsiana and he is entitled to advancement under the Merger Agreement for his reasonable legal fees and expenses incurred in the Embezzlement Action.

57.    Ryu was investigated by the DOJ and FBI by reason of the fact that he was an officer of BankAsiana and he is entitled to advancement under the Merger Agreement for the reasonable legal fees and expenses incurred in the DOJ/FBI Investigation.

58.    Hope Bancorp's failure to advance payment of reasonable legal fees and expense incurred by Ryu in the Embezzlement Action and DOJ/FBI Investigation is a breach of its contractual obligations under Section 6.7 of the Merger Agreement.

59.    As a result of Hope Bancorp's refusal to honor its contractual obligations to advance reasonable legal fees and expenses incurred by Ryu in the Embezzlement Action and the DOJ/FBI Investigation, Ryu was forced to initiate this action.

60.    An actual controversy has arisen and exists between Ryu and Hope Bancorp concerning Ryu's right as a former officer of BankAsiana to advancement of his legal fees and other expenses under the Merger Agreement. Ryu seeks a declaration that the Merger Agreement requires Hope Bancorp to advance his fees and expenses incurred in the Embezzlement Action, the DOJ/FBI Investigation, and this action.

61.     A declaratory judgment is needed to clarify the legal relations of the parties and will serve a useful purpose in resolving and settling the legal relations at issue. A declaratory judgment will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to this action.

62.     Ryu seeks judgment declaring that under the Merger Agreement, Ryu is entitled to advancement of reasonable legal fees and expenses incurred in the Embezzlement Action, the DOJ/FBI Investigation, and this action to enforce his rights under Section 6.7 of the Merger Agreement, including past fees and expenses and those to be incurred in the future in the Embezzlement Action and this action to enforce Ryu's rights under Section 6.7 of the Merger Agreement.

63.     Ryu also seeks an order enjoining Hope Bancorp to make prompt payment to Ryu, or his counsel, for the reasonable legal fees and expenses incurred to date by Ryu, and in the future to make prompt payment of such fees and expenses as and when incurred by Ryu.

64.     Ryu requests that the Court set forth an expedited procedure for submission, review, and decision of the reasonableness of his attorneys' invoices for the fees and expenses incurred to date, as well as a process for a procedure for advancement of fees and expenses incurred by Ryu on a going forward basis. Courts routinely establish such procedures in advancement actions like this.

## PRAYER FOR RELIEF

WHEREFORE, Ryu respectfully requests that the Court enter judgment:

a.      Declaring that under Section 6.7 of the Merger Agreement Ryu is entitled to advancement from Hope Bancorp of the reasonable legal fees and expenses incurred in the Embezzlement Action, the DOJ/FBI Investigation, and this action to enforce his rights under Section 6.7;

b.      Ordering Hope Bancorp to promptly pay the reasonable legal fees and expenses incurred to date by Ryu in the Embezzlement Action, the DOJ/FBI Investigation, and this action to enforce his rights under Section 6.7, as well as to make prompt payment of such fees and expenses as and when incurred by Ryu in the future;

c.      Ordering Hope Bancorp to pay prejudgment interest on the total amount of fees and expenses from the time of Ryu's demand for advancement on January 10, 2018, to the date that payment is received by Ryu;

d.      Establishing an expedited procedure for submission, review, and decision of reasonableness of Ryu's attorneys' invoices for the fees and expenses incurred to date, as well as a similar procedure for reasonable legal fees and expenses incurred by Ryu in the future; and

e.      Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

GREENBERG FREEMAN LLP

By:    /s/ Michael A. Freeman
         Michael A. Freeman
         110 East 59th Street
         22nd Floor
         New York, NY 10022
         (212) 838-3121
         freeman@greenbergfreeman.com

STEVE HARVEY LAW LLC
         Stephen G. Harvey*
         David V. Dzara*
         1880 John F. Kennedy Blvd.
         Suite 1715
         Philadelphia, PA 19013
         (215) 438-6600
         steve@steveharveylaw.com
         david@steveharveylaw.com

*Attorneys for Plaintiff, Suk Joon Ryu, a/k/a/ James S. Ryu*
*Motions for pro hac vice to be filed*

Dated: February 12, 2018

## **VERIFICATION**

I, Suk Joon Ryu, a/k/a James S. Ryu, a resident of Bergen County, New Jersey, hereby declare under penalty of perjury that I am the Plaintiff in this action, that I have read the foregoing *Verified Complaint* and the factual allegations contained therein, and that the facts as alleged are true and correct to the best of my knowledge, information, and belief.

Executed on February 12, 2018

Suk Joon Ryu