UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SUK JOON RYU, a/k/a JAMES S. RYU,           :
                                            :
                                            :    18 Civ. 1236 (JSR)
        Plaintiff,                          :
                                            :    OPINION AND ORDER
        -v-                                 :
                                            :
HOPE BANCORP, INC., as successor            :
by merger to Wilshire Bancorp, Inc.,        :
                                            :
        Defendant.                          :
----------------------------------------



JED S. RAKOFF, U.S.D.J.

This dispute concerns whether plaintiff Suk Joon Ryu is entitled to advancement of the attorney's fees he has incurred and will continue to incur in connection with federal investigations and a civil action arising out of his alleged embezzlement from his former employer, BankAsiana. Before the Court is defendant's motion to dismiss the complaint, ECF No. 19, and plaintiff's motion for summary judgment, ECF No. 14.

Ryu served as the Senior Vice President and Chief Operating Officer of BankAsiana until its merger with Wilshire Bancorp, Inc. ("Wilshire Bancorp") in 2013. Defendant Hope Bancorp, Inc. ("Hope Bancorp") is Wilshire Bancorp's successor by merger. Some time after BankAsiana and Wilshire Bancorp were merged, Miye Chon, a former BankAsiana employee, confessed to Wilshire Bank that she had embezzled money from BankAsiana. She alleged that Ryu was also involved. In connection with these allegations, the Federal Bureau

1

of Investigation and the U.S. Department of Justice opened a criminal investigation into the alleged embezzlement and Hope Bancorp filed a civil action against Ryu and Chon, among others, in the federal district court for the District of New Jersey.

Ryu here seeks advancement of attorney's fees under Section 6.7 of the Merger Agreement between Wilshire Bancorp and BankAsiana, pursuant to which Wilshire Bancorp "shall indemnify" directors or officers of BankAsiana "against" "any and all claims" – including "any and all claims, actions, suits, proceedings or investigations brought by" BankAsiana or any of its affiliates – "to the fullest extent possible that [BankAsiana] would have been permitted under its certificate of incorporation and bylaws" and "shall" also "advance expenses as incurred . . . to the fullest extent so permitted."

Plaintiff filed the instant action on February 12, 2018. See ECF No. 1. By telephone conference on February 22, 2018, plaintiff requested expeditious resolution of his claim. Defendant opposed the request. At an initial conference held the following week, on February 26, 2018, the Court set a briefing schedule for defendant's motion to dismiss and plaintiff's motion for summary judgment. See ECF No. 10. Upon full consideration of the papers submitted by the parties in connection with both motions, as well as the arguments presented at a hearing held on April 9, 2018, the Court rules as follows.

## Defendant's Motion to Dismiss

Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Ryu is not entitled to advancement under the terms of the Merger Agreement since Hope Bancorp has denied Ryu's demand and, in defendant's view, the Merger Agreement does not mandate advancement. See Defendant Hope Bancorp, Inc.'s Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem."), ECF No. 21.

To survive a motion dismiss under Rule 12(b)(6), a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court draws all reasonable inferences in plaintiff's favor and accepts as true all well-pleaded factual allegations in the complaint.

## I. Background

The pertinent allegations from the Complaint are as follows:

Plaintiff Suk Joon Ryu served as the Senior Vice President and Chief Operating Officer for BankAsiana from its founding until its merger with Wilshire Bancorp in October 2013. Complaint ("Compl.") at ¶¶ 1-2, ECF No. 1. Wilshire Bank is a wholly owned subsidiary of Wilshire Bancorp. Id. at ¶ 6.

In January 2014, Miye Chon (a/k/a Karen Chon), a former employee of BankAsiana, admitted to Wilshire Bank that she had embezzled over a million dollars from BankAsiana during the period

3

from 2010 to 2013. She claimed that Ryu knew about and approved of her criminal activities and that she gave a large part of the cash to him. Id. at ¶ 3. Chon's allegation led to a criminal investigation by the United States Department of Justice and the Federal Bureau of Investigation (the "Government Investigations"). Id. at ¶ 5. Ryu has incurred fees in connection with these investigations but has not been charged with anything. Id. at ¶¶ 5, 7. He does not expect to incur any additional legal fees or costs in connection with the investigations. Id. at ¶ 44.

In March 2014, Wilshire Bank (now Hope Bancorp) filed a civil lawsuit in the federal district court for the District of New Jersey against Chon and Ryu, among others, alleging that they had both participated in the embezzlement (the "Embezzlement Action"). Id. at ¶ 6; see also Bank of Hope, as successor to Wilshire Bank v. Miye Chon et al., No. 2:14-cv-01770-JLL-JAD (D.N.J.). Ryu has incurred and continues to incur substantial fees in this action. Id. at ¶ 7.

Section 6.7 of the Agreement and Plan of Merger between Wilshire Bancorp and Bank Asiana ("Merger Agreement"), titled "Indemnification," provides in pertinent part as follows:

> Acquiror shall indemnify, defend and hold harmless each person who is now, or has been at any time prior to the date hereof . . . , a director or officer of the Bank . . . against any and all claims, damages, liabilities, losses, costs, charges, expenses (including, subject to the provisions of this Section 6.7, reasonable fees and disbursements of legal counsel and other advisers and experts as incurred) . . . asserted against, incurred by or imposed upon any Indemnitee by reason of the fact that he or she

4

is or was a director or officer of the Bank . . . in connection with, arising out of or relating to (i) any threatened, pending or completed claim, action, suit or proceeding (whether civil, criminal, administrative or investigative), including, without limitation, any and all claims, actions, suits, proceedings or investigations by or on behalf of or in the right of or against the Bank or any of its Affiliates . . . or (ii) the enforcement of the obligations of Acquiror set forth in this Section 6.7, in each case to the fullest extent that the Bank would have been permitted under its certificate of incorporation and bylaws in effect as of the date hereof (and Acquiror shall also advance expenses as incurred due to clauses (i) or (ii) above to the fullest extent so permitted).

Id. at ¶ 18; id. at Ex. A, Section 6.7.

BankAsiana was incorporated in New Jersey. See id. at Ex. B. The applicable certificate of incorporation and bylaws in effect as of the date of the Merger Agreement neither prohibited nor placed any limits on the ability of BankAsiana to advance attorney's fees and expenses of its officers and directors under New Jersey Law. Id. at ¶ 19; see also id. at Exs. A, B.

By letter dated January 10, 2018, counsel for Ryu demanded that Hope Bancorp comply with its advancement obligations pursuant to Section 6.7 of the Merger Agreement in connection with civil action and the Government investigation. Id. at ¶ 47. The demand included an undertaking from Ryu that stated "I hereby agree to repay Bank of Hope any expenses paid on my behalf in advance of the final disposition of the Lawsuit, if it shall ultimately be determined by final judicial decision that I am not entitled to be indemnified."

Id. at ¶ 50. By letter dated February 2, 2018, Hope Bancorp, through its attorney, denied Ryu's demand for advancement. Id. at ¶ 50.

## II. Analysis

"The best evidence of what parties to a written agreement intend is what they say in their writing." Abakan, Inc. v. Uptick Capital, LLC, 943 F. Supp. 2d 410, 414 (S.D.N.Y. 2013) (internal quotation omitted).[1] "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002).

"When advancement and indemnification rights are set forth in a contract, such rights must be strictly construed." Comer v. Krolick, No. 651767/2014, 2015 N.Y. Misc. LEXIS 4395, at *34 (N.Y. Sup. Ct. Dec. 2, 2015) (citing Hayes v. Kleinewefers & Lembo Corp., 921 F.2d 453, 456 (2d Cir. 1990)); see also Heimbach v. Metropolitan Transp. Auth., 75 N.Y.2d 387, 392 (1990) (in an indemnity agreement, "the contractual language would have to . . . evince[] an unmistakable intention to indemnify before a court would enforce such an obligation." (internal citations omitted)). Moreover, "[i]t is well established that '[i]ndemnification and advancement of legal fees are two distinct corporate obligations.'" Comer, 2015 N.Y. Misc. LEXIS 4395, at *31 (quoting Crossroads ABL LLC v. Canaras Capital Mgmt., LLC, 105 A.D.3d 645 (N.Y. Sup. Ct. 2013)). "Indemnification

---

[1] The Merger Agreement is governed by New York law. See Compl. at Ex. A ¶ 9.7.

6

is the right to be reimbursed for all out of pocket expenses and
losses caused by an underlying claims," and generally "cannot be
resolved until after the merits of the underlying controversy are
decided." Majkowski v. American Imaging Mgmt. Servs., LLC, 913 A.2d
572, 586 (Del. Ch. 2006). "Advancement, by contrast, is a right
whereby a potential indemnitee has the ability to force the company
to pay his litigation expenses as they are incurred regardless of
whether he will ultimately be entitled to indemnification." Id.
(emphasis in original).

Here, the relevant language from the Merger Agreement provides
that "Acquiror shall indemnify" officers of BankAsiana "to the
fullest extent that [BankAsiana] would have been permitted under its
certificate of incorporation and bylaws in effect as of the date
hereof (and Acquiror shall also advance expenses as incurred . . .
to the fullest extent so permitted)." Compl. ¶ 18. On its face, this
is an expansive grant of mandatory indemnification and advancement
rights, constrained only by the latitude afforded by BankAsiana's
bylaws and certificate of incorporation.

BankAsiana's bylaws and certificate of incorporation are silent
on the issue of advancement. The bylaws provide only that
"BankAsiana shall have the power to indemnify a corporate agent
against his expenses in connection with any proceeding by or in the
right of the bank to procure a judgment in its favor which involves
the corporate agent by reason of his being of having been such
corporate agent, if he acted in good faith and in a manner he

7

reasonably believed to be in or not opposed to the best interests of
the bank." Compl. at ¶ 19; id. at Ex. C. BankAsiana's certificate of
incorporation does not address indemnification or advancement. Id.
at ¶ 19; id. at Ex. B at Art. IX.

However, this is not the end of the analysis. "Indemnification
is a right conferred by contract, under statutory auspice." Stifel
Fin. Corp. v. Cochran, 809 A.2d 555, 559 (Del. 2002). To determine,
as per the broad language of the Merger Agreement, the "fullest
extent" to which BankAsiana would have been "permitted" to advance
Ryu's legal fees and costs under its certificate of incorporation
and bylaws, the Court must also look to New Jersey law on
indemnification and advancement. See Lerner v. Prince, 987 N.Y.S.2d
19, 23 (N.Y. App. Div. 2014) ("[S]ubstantive issues such as issues
of corporate governance . . . are governed by the laws of the state
in which the corporation is chartered.").

Under the relevant New Jersey statute, "[a]ny bank of th[e]
State shall have the power to indemnify a corporate agent against
his expenses in connection with any proceeding by or in the right of
the bank to procure a judgment in its favor which involves the
corporate agent by reason of his being or having been such corporate
agent, if he acted in good faith and in a manner he reasonably
believed to be in or not opposed to the best interests of the bank."
N.J. Stat. Ann. § 17:9A-250(C). The statute also permits advancement
of a corporate agent's expenses, "if authorized by the board of
directors, upon receipt of an undertaking by or on behalf of the

8

corporate agent to repay such amount if it shall ultimately be
determined that he is not entitled to be indemnified as provided in
this section." N.J. Stat. § 17:9A-250(F).

Significantly, a board of directors is authorized to provide
advancement even if the certificate of incorporation and bylaws are
silent on the issue. See Section 17:9A-250(J) ("The powers granted
by this section may be exercised by a bank notwithstanding the
absence of any provision in its certificate of incorporation or
bylaws authorizing the exercise of such powers."). A bank can,
however, preclude the exercise of powers granted by statute in its
bylaws, certificate of incorporation or any other agreement. See
N.J. Stat. § 17:9A-250(K) ("[N]o indemnification shall be made or
expenses advanced by a corporation under this section, and none
shall be ordered by the Superior Court or other court, if that
action would be inconsistent with a provision of the certificate of
incorporation, a bylaw, . . . or an agreement . . . which prohibits,
limits, or otherwise conditions the exercise of indemnification
powers by the corporation or the rights of indemnification to which
a corporate agent may be entitled.").

Since BankAsiana's bylaws and certificate of incorporation are
silent on the question of advancement (neither authorizing nor
prohibiting it) and New Jersey law permits the board of directors of
a bank to advance legal fees even if those documents are silent,
advancement was "permitted" under the bylaws and certificate of

incorporation and, accordingly, was mandated under the plain terms of the Merger Agreement.[2]

The main case relied upon by defendant, Advanced Mining Sys., Inc. v. Fricke, 623 A.2d 82 (Del. Ch. 1992), is readily distinguishable.[3] The court in that case addressed the interplay between an analogous provision of the Delaware Code – which provides that expenses "may be paid by the corporation in advance of the final disposition of [an] action," Del. Code Ann. § 145 (emphasis added) – and a certificate of incorporation and bylaws mandating that "[t]he Corporation shall indemnify its directors, officers, employees, and agents to the extent permitted by the General Corporation Law of Delaware," Advanced Mining Sys., 623 A.2d at 84.

---

[2] Since the Court finds that the Merger Agreement mandates advancement, requiring advancement is not "inconsistent" with that agreement. See N.J. Stat. § 17:9A-250(K); Transcript dated April 9, 2018 at 9:14–10:7.

[3] Delaware case law is instructive because of the similarity between the relevant Delaware and New Jersey statutes and because the New Jersey statute was based on the Delaware statute. Vergopia v. Shaker, 922 A.2d 1238, 1239 n.1 (N.J. 2007) (per curiam) ("The very genesis of New Jersey's indemnification statute has been traced to Delaware's indemnification statute."); see also Doran Jones, Inc. v. Per Scholas, Inc., No. 16-cv-02483, 2017 WL 2197100, at *4 n.4 (S.D.N.Y. May 2, 2017) ("In its current form, . . . New Jersey indemnification and advancement law is 'consistent with that of Delaware and New York,' such that in the absence of relevant New Jersey case law, decisions interpreting comparable provisions of Delaware or New York law may provide persuasive guidance.") (citing Vergopia, 922 A.2d at 1239 n.1); Del Monte Fresh Produce, N.A., Inc. v. Kinnavy, No. 07 C 5902, 2010 WL 1172565, at *11 n.3 (N.D. Ill. Mar. 22, 2010) ("The New Jersey statute is based on an analogous Delaware statute and, in the absence of relevant New Jersey case law, the Court may look to the case law interpreting the Delaware statute for guidance.").

10

The court described the question before it as "whether a mandate to 'indemnify' includes an obligation to advance expenses prior to a determination whether indemnification is permitted or required." Id. The court held that it did not. Although assuming that a by-law mandating advancement would be valid, the court declined to read "indemnify" as including "advance" because "the better policy, more consistent with the provisions of [the Delaware advancement statute], is to require such by-law expressly to state its intention to mandate the advancement of arguably indemnifiable expenses under subsection (e)." Id. The Court continued, "Section 145(e) leaves to the business judgment of the board the task of determining whether the undertaking proffered in all of the circumstances, is sufficient to protect the corporation's interest in repayment and whether, ultimately, advancement of expenses would on balance be likely to promote the corporation's interests." Id.

While requiring mandatory advancement in this case deprives the board of the opportunity to decide whether it should advance Ryu's legal fees, as contemplated by the New Jersey statute, this is what the parties agreed to in the Merger Agreement. Unlike the bylaws and certificate of incorporation at issue in Advanced Mining Systems, where only "indemnification" was expressly mandated, the Merger Agreement here provides that "Acquiror shall also advance expenses as incurred . . . to the fullest extent so permitted,"⁴ Compl. at Ex.

---

⁴ Defendant's other cases are similarly distinguishable. See Comer, 2015 N.Y. Misc. LEXIS 4395, at *31 (denying advancement "solely on

A (emphasis added). That is, the Merger Agreement contains an "express mention of" "mandatory advancement rights." Majkowski, 913 A.2d at 586-87. Therefore, the Merger Agreement mandates advancement of fees.

## Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment under Federal Rule of Civil Procedure 56 and for a declaratory judgment under Federal Rule of Civil Procedure 57, seeking recovery of all the fees he has incurred in connection with both the Government Investigations and the Embezzlement Action, including fees incurred in connection with filing counterclaims and cross-claims in the Embezzlement Action and fees incurred in connection with filing the instant action for advancement. See Memorandum of Law in Support of Plaintiff's Motion Under Rules 56 and 57 for an Order Declaring His Contractual Right to Advancement of Legal Fees and Expenses ("Pl. Mem."), ECF No. 18. Plaintiff further moves for the Court to institute a summary procedure for reviewing the fees and costs plaintiff already has incurred and then continuing to review such fees and costs as they accrue. See id.

---

the language in" governing documents that provided that the company "shall indemnify" but only "may pay in advance any expenses . . . that may become subject to indemnification" (emphasis added)); Majkowski v. American Imaging Mgmt. Servs., LLC, 913 A.2d 572, 587 (Del. Ch. 2006) (finding no right to advancement where the relevant agreements "contain[ed] no express mention of any mandatory advancement rights," and instead included only an obligation to "indemnify and hold harmless").

12

A court may grant summary judgment "only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law." Nobel Ins. Co. v. Hudson Iron Works, Inc., 51 F. Supp. 2d 408, 411 (S.D.N.Y. 1999). In evaluating the record to determine whether there is a genuine issue of material fact, the court will "resolve all ambiguities and draw all reasonable inferences against the moving party." Fran Corp. v. United States, 164 F.3d 814, 816 (2d Cir. 1999) (internal quotation omitted). If the moving party carries its initial burden of showing there is no genuine factual dispute, then the burden shifts to the non-moving part to demonstrate the existence of a genuine issue of disputed fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

To obtain a declaratory judgment, the moving party must demonstrate the existence of an actual case or controversy. See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001) (per curiam). The controversy must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" and must "have taken on a fixed and final shape so that a court can see what legal issues it is deciding." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 300-301 (S.D.N.Y. 2012) (internal citations and quotations omitted). Courts have discretion over whether they will entertain a declaratory judgment action and should consider whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and if "it

13

will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir. 1986) (internal citations and quotations omitted).

## I. Background

There is no genuine dispute as to the truth of the pertinent allegations of the complaint recited above. That is, Ryu served as an officer of BankAsiana from its founding until the BankAsiana's merger with Wilshire Bancorp in October 2013. See Defendant Hope Bancorp, Inc.'s Responses to "Plaintiff's Rule 56.1 Statement" and Its Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def. Counter 56.1 Statement") at ¶¶ 1-2, ECF No. 28. Wilshire Bank and BankAsiana entered into a merger agreement that contained Section 6.7. Id. at ¶¶ 4-5. Following the merger, Chon admitted to Wilshire Bank that she embezzled over a million dollars from BankAsiana from 2010 to 2013 and claimed that Ryu was involved in this embezzlement. Id. at ¶¶ 8-9. Chon's admission and allegations led to a criminal investigation by the United States Department of Justice and the Federal Bureau of Investigation, as well as a civil action brought by Wilshire Bank against Chon, Ryu, and others. Id. at ¶¶ 14-15.

Wilshire Bank's original complaint against Ryu, filed on March 19, 2014, brought claims against Ryu for conversion, fraud, civil conspiracy to defraud, breach of fiduciary duties, misappropriation of trade secrets, misappropriation of confidential information, and

14

unjust enrichment. See Def. Counter 56.1 Statement at ¶ 16; Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Statement") at Ex. 7, ECF No. 15. Some of these claims depended on allegations about Ryu's embezzlement from BankAsiana, while others depended on an allegation that Ryu stole two computers that held BankAsiana's proprietary and confidential information when he left the company. See Pl. 56.1 Statement at Ex. 7. Ryu initially brought counterclaims for malicious prosecution, defamation, illegal seizure of funds, as well as a cross-claim for defamation. See Def. Counter 56.1 Statement at ¶ 25; Pl. 56.1 Statement at Ex. 8.

Wilshire Bank then filed an amended complaint, bringing claims for civil conspiracy to defraud, breach of fiduciary duty, unjust enrichment, and conversion. See Def. Counter 56.1 Statement at ¶ 26; Pl. 56.1 Statement at Ex. 9. Ryu's counterclaims to the amended complaint were for defamation, illegal seizure of funds on deposit, tortious interference with a contractual relationship, and conversion. See Def. Counter 56.1 Statement at ¶ 30; Pl. 56.1 Statement at Ex. 10. He also filed a cross-claim against Chon for defamation and cross-claims against all his co-defendants for contribution and indemnification. Pl. 56.1 Statement at Ex. 10.

On March 14, 2014, Ryu's initial attorney sent an email to Hope Bancorp requesting that Wilshire Bank make available to Ryu any insurance coverage available to him. Def. Counter 56.1 Statement at ¶ 45. On March 21, 2014, Ryu's attorney sent a letter to Wilshire Bank demanding indemnification and representing that he would

15

shortly be providing an undertaking "as a condition precedent to the receipt of pendente lite indemnification." Id. at ¶ 46. On March 25, 2014, Wilshire Bank's counsel responded to this request, stating that Wilshire Bank was unaware of any insurance coverage available for Ryu's defense and that it would get back to Ryu regarding his demand for indemnification. Id. at ¶ 47. By letter dated January 10, 2018, counsel for Ryu demanded that Hope Bancorp comply with its advancement obligations pursuant to the Merger Agreement. Id. at ¶ 39. By letter dated February 2, 2018, Hope Bancorp, through its attorney, denied the demand for advancement. Id. at ¶ 41.

## II. Analysis

Defendant argues that Ryu is not entitled to advancement because he did not provide Hope Bancorp with proper notice of his intent to claim indemnification as required under the Merger Agreement and/or waived his right to seek advancement. Further, defendant argues, Ryu is at least not entitled to advancement of all the costs and fees he seeks. In particular, Wilshire Bank's conversion claim was not brought against Ryu "by reason of" the fact that he was an officer of BankAsiana, Ryu's counterclaims and cross-claims were not incurred as part of his defense "against" Wilshire Bank's action, and the Merger Agreement does not provide for advancement of costs incurred in connection with the suit seeking advancement. See Defendant Hope Bancorp, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 56 and 57 ("Def. Opp."), ECF No. 27.

16

In addition, for the first time at oral argument, defendant contended that several issues raised by plaintiff's motion for summary judgment require discovery: (i) what fees have been incurred; (ii) whether Ryu waived his right to seek advancement; (iii) which claims were brought "by reason of" the fact that Ryu was an officer; and (iv) whether Ryu is entitled to "fees on fees." The Court agrees that defendant is entitled to discovery on what fees have been incurred, but finds that defendant is not entitled to discovery on any of the other issues. See Transcript dated April 9, 2018 ("Tr.") at 14:14-15:2, 16:14-17:24. As to waiver, the parties have been litigating this case in the federal district court for the District of New Jersey since March 2014 and discovery is set to conclude on April 30, 2018. See Bank of Hope v. Miye Chon et al., No. 2:14-cv-01770-JLL-JAD, ECF No. 199 (D.N.J.). It seems implausible to the Court that opportunity for discovery in this action would unearth any further evidence of waiver. With respect to the remaining issues, the Court also finds that no additional factual development is warranted. The question of which claims were brought "by reason of" the fact that Ryu was an officer requires consideration only of the complaints filed by Wilshire Bank/Hope Bancorp, while the question of whether Ryu is entitled to "fees on fees" is a matter of law.

## A. Whether Notice Was Provided

Defendant argues that Ryu failed to provide notice of his intention to seek advancement as required by Section 6.7. See Def.

17

Opp. at 16 n.15. Section 6.7 provides that "[a]ny indemnitee wishing to claim indemnification under this Section 6.7 shall promptly notify Acquiror in writing upon learning of any Claim, but the failure to so notify shall not relieve Acquiror of any liability it may have to such Indemnitee except to the extent that such failure prejudices Acquiror." Def. Counter 56.1 Statement at ¶ 5. Defendant contends that plaintiff's counsel's March 21, 2014 letter did not provide the required notice of Ryu's claim for advancement and indemnification as required to Section 6.7 because, under the notice provision set forth in Section 9.4 of the Merger Agreement, plaintiff was "required" to send notice of his claim to Mr. Yoo, with a copy to Hunton & Williams LLP. See id. at ¶ 6; Pl. 56.1 Statement at Ex. 2.

However, Section 9.4 of the Merger Agreement simply sets forth one procedure that, if followed, would establish notice as a matter of law. See Pl. 56.1 Statement at Ex. 2 § 9.4 ("All notices and other communications hereunder shall be in writing and shall be deemed given if delivered" to the specified addresses (emphasis added)). It does not preclude Ryu's proving that notice was actually provided through some other means, which he has done. See Def. Counter 56.1 Statement at ¶¶ 46-47 (Ryu's counsel sent a letter requesting indemnification and advancement to Wilshire Bank's litigation counsel, Jane Chuang, on March 21, 2014 and Wilshire Bank's counsel responded four days later). Accordingly, there is no

genuine dispute that Ryu provided Wilshire Bank with notice of his intent to seek advancement.

## B. **Whether Ryu Waived His Right to Seek Advancement**

A waiver is the "voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." General Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist., 85 N.Y.2d 232, 236 (1995); see also Kroshnyi v. United States Pack Courier Servs., Inc., 771 F.3d 93, 111 (2d Cir. 2014). It "may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." General Motors Acceptance Corp., 85 N.Y.2d at 236.

Ryu's conduct does not evince such an intent. To the contrary, Ryu's former counsel made a claim for advancement under the Merger Agreement just two days after Wilshire Bank filed the Embezzlement Action. See Def. Counter 56.1 Statement ¶ 46. As just discussed, this claim for advancement was sent to Jane Chuang, counsel for Wilshire Bank in the Embezzlement Action. Id. at ¶ 46. Although plaintiff then did not pursue the claim under the Merger Agreement for four years, "[i]t is well established . . . that 'negligence, oversight or thoughtlessness' does not create a waiver, and waiver 'cannot be inferred from mere silence," Kroshnyi, 771 F.3d at 112 (quoting Peck v. Peck, 232 A.D.2d 540 (N.Y. App. Div. 1996)).

## C. **What Fees and Costs are Covered**

### a. **"By Reason Of"**

19

Section 6.7 of the Merger Agreement provides for advancement in connection with any action brought against a person, "by reason of the fact that he or she is or was a director or officer of the Bank." New Jersey law similarly only provides for indemnification – and advancement – "in connection with any proceeding by or in the right of the bank to procure a judgment in its favor which involves the corporate agent by reason of his being or having been such corporate agent . . . ." N.J. Stat. Ann. § 17:9A-250(C).

The Delaware Supreme Court has held that "if there is a nexus or causal connection between any of the underlying proceedings contemplated by section 145(e) and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct." Homestore, Inc. v. Tafeen, 888 A.2d 204, 214 (Del. 2005).[5] "[T]he nexus is established if the corporate powers were used or necessary for the commission of the alleged misconduct. This language has been interpreted broadly, and includes all actions against an officer or director for wrongdoing that he committed in his official capacity, and for all misconduct that allegedly occurred in the course of performing his day-to-day managerial duties." Imbert v. LCM Interest Holding LLC, C.A. No. 7845-ML, 2013 Del. Ch. LEXIS 126, at *17 (Del. Ch. Feb. 7, 2013) (internal

---

[5] Because Delaware courts have often addressed indemnification and advancement, New York courts have looked to Delaware courts for guidance on these issues. See Ficus Invs., Inc. v. Private Capital Mgmt., LLC, 61 A.D.3d 1, 9 (N.Y. App. Div. 1st Dep't 2009).

quotations and citations omitted); see also Del Monte Fresh Produce,
N.A., Inc. v. Kinnavy, No. 07 C 5902, 2010 WL 1172565, at *13-16
(N.D. Ill. Mar. 22, 2010) (applying the nexus/causal relationship
test developed under Delaware law in a case involving N.J. Stat. §
14A:3-5).

Courts, however, do not construe "by reason of the fact . . .
so broadly as to encompass every suit brought against an officer and
director." Weaver v. ZeniMax Media, Inc., No. 20439-NC, 2004 Del.
Ch. LEXIS 10, at *10 (Del. Ch. Jan. 30, 2004). Thus, where a claim
is related to a personal obligation of an officer to the
corporation, as opposed to an obligation of such officer in their
official capacity, such claim would be not be subject to
advancement. See id. at *16-17 (denying advancement for a claim that
a former officer had taken too much vacation time and submitted
fraudulent travel expenses); Stifel Fin. Corp., 809 A.2d at 562
(affirming trial court's finding that indemnification did not apply
to claims to enforce an employment contract because such claims were
personal and not based on the party's official capacity as an
officer).

Here, the Government Investigations have a nexus to Ryu's
status as an officer of BankAsiana because his corporate powers were
used for the commission of the alleged embezzlement under
investigation. Federal authorities began their investigation of Ryu
based on Chon's statement that Ryu, while serving as an officer of
BankAsiana, either uncovered Chon's embezzlement scheme and, instead

of reporting it, encouraged her to continue embezzling and pay the money to him or conspired together with Chon to embezzle with BankAsiana. See Def. Counter 56.1 Statement at ¶¶ 8-9. Hope Bancorp's general counsel testified at her deposition that she thought that Ryu used his position at BankAsiana to ensure that Chon would not be caught. Id. at ¶ 12.

Most of the affirmative claims in the civil action also are based, in part, on Chon's statements about the alleged embezzlement scheme. Id. at ¶ 15. Specifically, the original complaint brought claims for conversion, fraud, civil conspiracy to defraud, breach of fiduciary duties, misappropriation of trade secrets, misappropriation of confidential information, and unjust enrichment. Pl. 56.1 Statement at Ex. 7. Some of the conversion claims (Counts 14-20), the fraud claim (Count 21), the civil conspiracy to defraud claim (Count 22), three breach of fiduciary duty claims (Counts 23-25), and an unjust enrichment claim (Count 34) depended on the embezzlement scheme. Id. at Ex. 7, pp. 14-20, 24. Wilshire Bank then filed an amended complaint, in which it brought claims against Ryu for civil conspiracy to defraud, breach of fiduciary duty, unjust enrichment, and conversion. Id. at Ex. 9. The conversion claim (Count 13), civil conspiracy to defraud claim (Count 14), two breach of fiduciary duty claims (Counts 15-16), and an unjust enrichment claim (Count 17) depend on the embezzlement scheme. Id. at pp. 11-13.

The complaints allege that Chon, then BankAsiana's Assistant Vice President and Operations Officer, aided and abetted by Ryu, "used her credentials to access BankAsiana's computer system and made a number of unauthorized withdrawals from BankAsiana's customers' certificate of deposit ('CD') accounts, and thereafter removed such funds in cash from the vault." Pl. 56.1 Statement at Ex. 9 ¶ 18; see also id. at Ex. 7 ¶ 29 ("Chon, aided and abetted by Ryu, periodically removed sums of cash from the bank's cash vault and, to conceal such theft, falsified the bank's records by: (a) recording fictitious 'withdrawals' in corresponding sums from the bank's customers' CD accounts; and (b) thereafter recording fictitious 'transfers' of funds from other customers' CD accounts to those accounts shortly prior to maturity.").

Thus, there can be no genuine dispute that the federal investigations and civil claims relating to Ryu's alleged embezzlement were brought against him "by reason of" the fact that he was an officer. The facts at issue here are very similar to those in Perconti v. Thornton Oil Corp., where the court found that Perconti, who was charged with "a fraudulent scheme of embezzling funds from Thornton for both making investments and covering margin calls," was entitled to advancement because it was Perconti's "status as officer that enabled him to embezzle (or cause another to embezzle for his benefit) or to transfer the corporate funds for his benefit." No. Civ. A. 18639-NC, 2002 WL 982419, at *6 (Del. Ch. May

3, 2002). Nor could Perconti have "hid[den] his conduct" without his position. Id. The same, allegedly, is true of Ryu.

By contrast, Wilshire Bank's claims relating to Ryu's alleged theft of two computers from BankAsiana upon his departure from the bank (Counts 26-33, 35, and 36 of the original complaint, see Pl. 56.1 Statement Ex. 7 pp. 20-25, and Counts 18-19 of the amended complaint, see id. at Ex. 9 pp. 13-14) have no nexus to the fact that Ryu was an officer. Wilshire Bank claims that Ryu stole these computers at least in part to get Wilshire Bank's proprietary information and trade secrets "to directly compete against Wilshire Bank as New Millenium Bank's senior vice president and chief operating officer." Pl. 56.1 Statement at Ex. 7 ¶ 39. Ryu does not, however, claim that he only had access to any such confidential and proprietary information because of Ryu's status as an officer of BankAsiana. Nor could he colorably claim that he was only able to take the computers by reason of the fact that he was an officer of BankAsiana. Instead, Ryu contends only that these claims depend on his role as an officer simply because he took the computers "while an officer of BankAsiana." Pl. Mem. at 14; see also Plaintiff's Reply Mem[o]random in Further Support of His Motion Under Rules 56 and 57 for an Order Declaring his Contractual Right to Advancement of Legal Fees and Expenses ("Pl. Reply") at 6 n.3, ECF No. 30 (conclusorily stating that this "is a case of the bank's two top officers using their authority to take the computers"). Therefore, none of these claims depends on an "alleged use . . . of corporate

24

authority or position," Weaver, 2004 Del. Ch. LEXIS 10, at *17, and Ryu is not entitled to advancement of fees incurred in connection with them.

### b. Costs and Fees Related to Ryu's Counterclaims and Crossclaims

Plaintiff also seeks advancement of the fees he has incurred pursuing his counterclaims and crossclaims in the Embezzlement Action. His original counterclaims were for: (i) malicious prosecution; (ii) defamation; and (iii) illegal seizure by Wilshire Bank of $54,000 in his checking account. His original cross-claim was for defamation. Def. Counter 56.1 Statement at ¶ 25. His amended counterclaims are for defamation, illegal seizure of funds on deposit, tortious interference with a contractual relationship, and conversion. His amended crossclaims are for defamation, contribution, and indemnification. Id. at ¶ 30.

Section 6.7 provides that "Acquiror shall indemnify . . . against . . . any and all claims, damages, liabilities, losses, costs, charges, expenses (including, . . . reasonable fees . . .) . . . in connection with, arising out of or relating to . . . any threatened, pending, or completed claim, action, suit, or proceeding." Id. at ¶ 5. Plaintiff argues that because the Merger Agreement provides indemnification of fees in any action "relating to" any action, it is not limited to fees spent incurred defending Bank of Hope's claims. However, the Merger Agreement only permits indemnification "against" such claims, and therefore does not

include all of Ryu's counter and crossclaims. Cf. Citadel Holding
Corp. v. Roven, 603 A.2d 818, 824 (Del. 1992) ("in defending"
language in an advancement provision required advancement for
compulsory counterclaims because they were "necessarily part of the
same dispute and were advanced to defeat, or offset" the affirmative
claim).

Plaintiff contends that even if Section 6.7 provides for
advancement of expenses only in defending against any action, he
still is entitled to indemnification for his counterclaims and
cross-claims. As the parties agree, under the test set forth in
Pontone v. Milso Indus. Corp., advancement for a counterclaim is
required if it is (1) a compulsory counterclaim (i.e., "arises out
of the transaction or occurrence that is the subject matter of the
opposing party's claim") and (2) "advanced to defeat, or offset" the
affirmative claims brought against the corporate agent. 100 A.3d
1023, 1054-55 (Del. Ch. 2014). However, legal expenses "incurred in
pursuit of merely permissive counterclaims, which do not arise out
of the transaction or occurrence that is the subject matter of the
opposing party's claim . . . , cannot justifiably be construed as
part of an [officer's] defense of claims brought against her by a
corporation." Reinhard & Kreinberg v. Dow Chem. Co., No. 3003-CC,
2008 WL 868108, at *3 (Del. Ch. Mar. 28, 2008) (internal quotations
omitted). The Second Circuit has explained that, in order for a
counterclaim to be compulsory "the 'essential facts of the claims
[must be] so logically connected that considerations of judicial

economy and fairness dictate that all the issues be resolved in one lawsuit.'" Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (quoting Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000)).

Ryu is entitled to advancement for costs and fees incurred in connection with one of his defamation counterclaims. Ryu's first count for defamation (in his amended answer and counterclaims) depends on the following allegations: on February 10, 2014, the branch manager of Wilshire Bank's Palisade Park branch allegedly told investors in Ryu's new employer, New Millenium Bank, that Ryu conspired with Chon to embezzle money and that "Ryu would be arrested for embezzlement." See Pl. 56.1 Statement at Ex. 10 pp.36-37 ¶ 99; see also Bank of Hope v. Chon et al., No. 14-1770-JLL, ECF No. 137 (D.N.J. Jan. 4, 2017). The "essential facts" of this counterclaim are logically connected to the Wilshire Bank's action against Ryu because the truth or falsity of the statement that Ryu conspired with Chon to embezzle money – an element of Ryu's defamation claim – depends on the same facts on which the Embezzlement Action depends.

Ryu's claim for illegal seizure of funds is also a compulsory counterclaim. Wilshire Bank froze his bank account from January 2014 to January 2015, while it was investigating his connection to the embezzlement alleged by Chon. See Pl. 56.1 Statement at Ex. 10 p.36 ¶ 97. When Ryu originally objected to his account being frozen, Hope Bancorp referred to a provision of the Deposit Account Agreement

27

that provides that "[i]f we are uncertain regarding the legality of any transaction, we may . . . freeze the amount in question while we investigate the matter." Id. at Ex. 10 p.30 ¶ 59. The Court agrees with Ryu that "[t]here is no question that Ryu's alleged participation in the embezzlement with Karen Chon was the ostensible reason for seizing and withholding Ryu's funds," Pl. Reply at 7, and, accordingly, that his claim for illegal seizure of funds is a compulsory counterclaim brought as part of Ryu's defense against Wilshire Bank's affirmative claims.

Ryu is not entitled to advancement in connection with any of his other counterclaims. As Ryu's counsel conceded at oral argument, see Tr. at 20:17-22, his second count for defamation was not compulsory since the defamation was based on a book published after the fact, see Pl. 56.1 Statement at p.38 ¶¶ 108, 114, 115. Similarly, the malicious prosecution counterclaim from Ryu's original counterclaims is not a compulsory counterclaim as it stems from the filing of the main action, not the facts underlying the main action. See Harris v. Steinem, 571 F.2d 119, 124 (2d Cir. 1978). Nor was Ryu's tortious interference claim, which arises out of New Millenium Bank's termination of his employment on March 25, 2014 compulsory. Id. at p.38 ¶ 104. To plead a claim for tortious interference with a contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4)

28

damages." Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996).
Whether Hope Bancorp intentionally procured a breach of Ryu's
contract with New Millenium Bank is distinct from the question of
whether Ryu actually embezzled funds from Hope Bancorp.[6] Therefore,
resolution of the tortious interference claim does not depend on
resolution of any of the same facts or legal questions underlying
the civil embezzlement action.

Lastly, Ryu cannot recover fees and costs incurred in
connection with his counterclaim for conversion or his cross-claims.
Since Ryu's conversion claim is a compulsory counterclaim only to
Wilshire Bank's conversion claim, which is not covered by the
indemnification provision, he is not entitled to advancement of fees
and costs relating to that claim. And Ryu's cross-claims patently
were not brought as defenses against Wilshire Bank's suit, since
they were, as their title implies, brought against Ryu's co-
defendants and not Wilshire Bank.

### c. Costs and Fees Incurred in Connection with this Advancement Action

Section 6.7 expressly provides that Ryu is entitled to his
reasonable legal fees and expenses "relating to . . . (ii) the
enforcement of the obligations of Acquiror set forth in this Section

---

[6] By contrast, for example, in Pontone, 100 A.3d 1023, the court
found that a tortious interference counterclaim was compulsory where
the affirmative claim was for breach of a non-compete agreement and
the counterclaim of tortious interference with business advantage
required proof that the defendant was legally entitled to conduct
the business.

6.7 . . . ." Ryu argues that he therefore is entitled fees relating
to this action. In New York, "an award of fees on fees must be based
on a statute or on an agreement." 546-552 W. 146th St. LLC v. Arfa,
99 A.D.3d 117, 120 (N.Y. Sup. Ct. 2012) (internal quotation
omitted). Therefore, although New York courts, have been averse to
finding a right of indemnification for fees on fees, id. at 121, it
is a matter of contract and the parties' agreement here clearly
provides for legal fees and expenses relating to enforcement of
Wilshire Bank's indemnification and advancement obligations.

## Conclusion

In sum, defendant's motion to dismiss is denied and plaintiff's
motion for summary judgment is granted in part. The Court finds that
Ryu is entitled to advancement of the fees and costs he has incurred
in connection with the Government Investigations and in defending
against the Embezzlement Action, with the exception of those fees
and costs incurred in connection with the civil claims arising out
of allegations that Ryu stole two computers from BankAsiana upon his
departure. Moreover, Ryu's "defense" against the Embezzlement Action
does not include any counterclaims or cross-claims apart from his
first claim for defamation and his claim for illegal seizure of
funds.

Finally, the Court intends to transfer this action to the
federal district court for the District of New Jersey so that that
court may determine what fees have been incurred thus far and

establish a summary procedure for the advancement of fees going forward. New Jersey would be a proper venue for this action since "a substantial part of the events or omissions giving rise to the claim" occurred there. 28 U.S.C. § 1391(B). The case is before this Court only because of a forum selection provision in the Merger Agreement. Prior to the commencement of this action, plaintiff requested that Hope Bancorp waive that provision so that this action could be heard in New Jersey, and Hope Bancorp refused the request. Def. Counter 56.1 Statement at ¶ 43. At the April 9, 2018 hearing, counsel for defendant consented, subject to consultation with his client, to transferring the action to New Jersey in the event that the Court were to deny defendant's motion to dismiss. See Tr. at 15:3-16:8. Counsel for plaintiff also consented. See id. Counsel for defendant shall notify the Court by no later than April 25, 2018 whether or not his client consents to the transfer of venue.

The Clerk is directed to close the entries at docket numbers 14 and 19.

SO ORDERED.

Dated:    New York, NY
          April 24, 2018

                                        JED S. RAKOFF, U.S.D.J.