DC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/6/20

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SUK JOON RYU, a/k/a JAMES S. RYU,    :
                                     :   18-cv-1236 (JSR)
          Plaintiff,                 :
                                     :
     -v-                             :
                                     :
HOPE BANCORP, INC., as successor     :   MEMORANDUM ORDER
by merger to Wilshire Bancorp, Inc., :
                                     :
          Defendant.                 :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On January 30, 2020, the Honorable Katharine H. Parker, United States Magistrate Judge, issued a Report and Recommendation in the above-captioned matter recommending the granting of the second application of plaintiff Suk Joon Ryu, dated September 11, 2019, for advancement of certain legal fees and expenses, subject to several limitations. Report and Recommendation, ECF No. 159 ("R&R"). On February 13, 2020, defendant Hope Bancorp, Inc. filed objections to certain portions of the R&R. ECF No. 160. Ryu opposes Hope Bancorp's objections. ECF No. 163.

Based on the Court's de novo review of the R&R, the objections and responses, and the underlying record, the Court finds itself largely in agreement with Magistrate Judge Parker's excellent and thorough R&R, and adopts its reasoning by reference, except for three instances discussed below.

1

### A. Recommendation to grant Ryu's application for $65,904.17 in fees and costs related to Ryu's appeal of the gag order in the Embezzlement Action

Familiarity with the relevant background to this case, as well as the third-party civil action in <u>Bank of Hope v. Miye Chon, et al.</u>, No. 2:14-cv-1770 (KM) (JAD) (D.N.J.) (the "Embezzlement Action"), is here assumed. As relevant here, after the Embezzlement Action commenced, Ryu started a letter campaign to various third parties - such as shareholders of Bank of Hope - allegedly to pressure Bank of Hope to settle the case with him. The New Jersey federal district court in the Embezzlement Action issued a gag order directing that "Ryu's communications with those affiliated with his adversary [i.e., Bank of Hope] should be made through his counsel only." 2:14-cv-01770 (KM) (JAD) (D.N.J.) ("NJ ECF"), No. 191, at 5. Ryu appealed the gag order to the U.S. Court of Appeals for the Third Circuit, arguing that the order violated his First Amendment right. NJ ECF No. 195. The Third Circuit vacated the gag order and remanded for further proceedings. NJ ECF No. 365-1, at 7.

Ryu here seeks reimbursement of $65,904.17 in fees and costs - covered in the invoices of one of Ryu's law firms from September 2018 to June 2019 - incurred in connection with his appeal of the gag order to the Third Circuit. The Magistrate Judge here recommends granting the application for reimbursement

2

of all such fees and costs associated with the appeal, especially in that:

> Hope Bancorp was the party that caused the expense by seeking the gag order in the first place. Its decision was strategic and/or used to gain leverage in the Embezzlement Action. Hope Bancorp cannot now dispute these fees when it was their action against Ryu that caused Ryu to incur these fees.

R&R 9-10.

The Court disagrees and holds that none of $65,904.19 in fees and costs associated with the appeal of the gag order are advanceable and, therefore, reimbursable. The Magistrate Judge did not address the threshold, and fundamental, question of whether the work associated with the gag order arose "by reason of" Ryu's previous role as a bank officer, which is the operative test for determining whether given fees and costs are advanceable. ECF No. 34, at 20-21. The Court previously set the analytical framework concerning "by reason of" as:

> [T]he nexus is established if the corporate powers were used or necessary for the commission of the alleged misconduct. This language has been interpreted broadly, and includes all actions against an officer or director for wrongdoing that he committed in his official capacity, and for all misconduct that allegedly occurred in the course of performing his day-to-day managerial duties. . . .
>
> [W]here a claim is related to a personal obligation of an officer to the corporation, as opposed to an obligation of such officer in their official capacity, such claim would be not be subject to advancement.

3

ECF No. 34, at 20-21. Ryu's right to communicate to shareholders of Bank of Hope did not arise "by reason of" his previous role as a bank officer, because the lawfulness of his communications is distinct from the question of whether Ryu actually embezzled funds from Bank of Hope.[1] Further supporting this conclusion, the Third Circuit wrote, in explaining why it invoked the collateral order doctrine:

> [T]he District Court's order resolved an important non-merits issue. . . . [I]t weighed Ryu's First Amendment rights against the Court's inherent power to manage proceedings. The order was also unrelated to the merits. The Bank had sued Ryu to recover the embezzled funds, not to keep him from writing to its shareholders. And Ryu's counterclaims sound in tort and contract.

NJ ECF No. 365-1, at 7.

**B. Recommendation to reduce by $357.00 the fees and costs associated with the work done in Ryu's defense of Bank of Hope's claims after March 22, 2019**

---

[1] This conclusion is consistent with how the Court previously ruled on what other claims are not advanceable. See ECF No. 34, at 24-29. For instance, Ryu's counterclaim for defamation was held not advanceable, "since the defamation was based on a book published after the fact." Id. at 28. Similarly, Ryu's counterclaim for malicious prosecution was held not advanceable, because "it stems from the filing of the main action, not the facts underlying the main action." Id. Lastly, Ryu's counterclaim for tortious interference was also held not advanceable, because "[w]hether Hope Bancorp intentionally procured a breach of Ryu's contract with New Millenium Bank is distinct from the question of whether Ryu actually embezzled funds from Hope Bancorp" and thus "resolution of the tortious interference claim does not depend on resolution of any of the same facts or legal questions underlying the civil embezzlement action." Id. at 29.

4

The Magistrate Judge recommends denying application for reimbursement of any work done after March 22, 2019 in connection with Ryu's defense of Bank of Hope's claims, because that is when Bank of Hope filed its motion to voluntarily dismiss its claims against Ryu. R&R 11-12; see also Declaration of Michael M. Yi, ECF No. 161 ("Yi Decl.") ¶¶ 22-23.[2] No party objects to the recommendation that the work performed after March 22, 2019 should not be reimbursed, and the Court agrees with it as well.

However, the Magistrate Judge made a calculation error in recommending a reduction in the amount of $357.00 (corresponding to the time entries of Gloria Vasconcellos, an employee at Ryu's expert firm, after March 22, 2019) rather than $758.50 (which would also include the time entry by Nicole Donecker, another employee, after March 22, 2019). ECF No. 133-24, at 8-9. Therefore, the Court holds that a reduction by $758.50, not $357.00, is warranted to account for the fact that the work done after March 22, 2019 should not be reimbursable.

### C. Recommendation to reduce by $21,445.69 the fees and costs in certain invoices based on quarter-hour billing increments

---

[2] Ryu does not dispute these facts alleged in the declaration of Michael M. Yi, counsel for Hope Bancorp. See Plaintiff's Response in Opposition to Defendant's Objections to the Report and Recommendation of Magistrate Judge Katharine H. Parker Issued January 30, 2020, ECF No. 163, at 1.

Parts of Ryu's invoices from May 5, 2018 to July 31, 2018, totaling $165,369.30, are based on quarter-hour billing increments rather than one-tenth of an hour increments. The Magistrate Judge recommends making a 15% reduction, because the quarter-hour billing practice created an upward bias of inflating the amount spent on tasks that require only a short time span. R&R 5-6. No party objects to this part of the recommendation, and the Court agrees with it as well.

However, it appears to be that the Magistrate Judge erroneously applied the 15% reduction to $142,971.25, which was the amount Hope Bancorp had already advanced under this category, rather than to $165,369.30, the total amount at issue related to the quarter-hour billing issue. Therefore, the Court holds that a reduction in the amount of $24,805.40 (rather than $21,445.69) is warranted for these invoices.

## Conclusion

In conclusion, the Court grants Ryu's second application for advancement of certain legal fees and expenses, subject to the limitations set forth in this Memorandum Order and in the Magistrate Judge's R&R (to the extent not corrected by this Memorandum Order). As so corrected, the amount due to Ryu in connection with his second application is $79,058.26 ($53,840.06 to Steve Harvey Law, $7,963.20 to Greenberg Freeman LLP, and $17,255.00 to Marcum Group), plus pre-judgment interest on that

amount at the rate of 9% per annum under N.Y.C.P.L.R. § 5004. Hope Bancorp is ordered to pay this amount by no later than March 13, 2020 at 5:00 p.m.

The Clerk of the Court is directed to close the entry bearing docket number 131.

SO ORDERED.

Dated:  New York, NY
        March 5, 2020

JED S. RAKOFF, U.S.D.J.